24CA1017 Peo v Hernandez 07-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1017
El Paso County District Court No. 13CR5361
Honorable Robin Chittum, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jorge Luis Pilo Hernandez,

Defendant-Appellant.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE GROVE
Moultrie and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 30, 2026

---

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Lauretta A. Martin Hillier, Alternate Defense Counsel, Montrose, Colorado, for
Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, Jorge Luis Pilo Hernandez, appeals the district court's order denying his Crim. P. 35(c) motion after a hearing.  We affirm.

## I.     Background

¶ 2     The People charged Hernandez with, among other things, attempted first degree murder, first degree assault, aggravated robbery, second degree arson, two counts of second degree kidnapping, three counts of sexual assault, two crime of violence sentence enhancers, and four habitual criminal counts.

¶ 3     The charges were based on allegations that Hernandez and a codefendant became angry with the victim, pushed her out of an apartment and down some stairs, and then shoved her into the back seat of her car.  *See People v. Hernandez*, slip op. at ¶ 2 (Colo. App. No. 17CA0035, May 9, 2019) (not published pursuant to C.A.R. 35(e)); *see also People v. Sullivan*, slip op. at ¶ 4 (Colo. App. No. 15CA1009, Sep. 13, 2018) (not published pursuant to C.A.R. 35(e)) (setting forth evidence developed at the codefendant's trial). The events were witnessed by the renter of the apartment, a woman named Taylor Sappington.  *Sullivan*, No. 15CA1009, slip op. at ¶ 4. The next day, a pedestrian found the victim unconscious on the

1

side of the road. *Hernandez*, No. 17CA0035, slip op. at ¶ 2. She survived her injuries, which resulted from being beaten, shot in the head, and sexually assaulted. *Id.* Her incinerated car was also recovered. *Id.*

¶ 4    Hernandez was represented by Dan MacInnis and Tracey Eubanks, and the case was originally set for a jury trial. Hernandez's codefendant proceeded to trial, where he was convicted of some charges but acquitted of others. Three months later, Hernandez pleaded guilty to first degree assault and robbery. In exchange, the prosecution agreed to dismiss the remaining charges, and the parties stipulated to a cumulative forty-year prison sentence.

¶ 5    Before he was sentenced, Hernandez sought to withdraw his plea. The court appointed counsel, who filed a supplemental Crim. P. 32(d) motion. After a hearing at which it denied Rule 32(d) relief, the court imposed the stipulated sentence. Hernandez appealed the denial of his Crim. P. 32(d) motion, and a division of this court affirmed. *Hernandez*, No. 17CA0035, slip op. at ¶¶ 1, 22.

¶ 6    In 2021, Hernandez filed a pro se Crim. P. 35(c) motion. The district court appointed postconviction counsel, who filed a

2

supplemental motion incorporating by reference all of Hernandez's pro se arguments and adding detail to some of his claims. The People responded, informing the court, among other things, that MacInnis had passed away and therefore would not be available to testify at a hearing.

¶ 7    The district court held a hearing on the postconviction motion. In a subsequent written order, the court rejected Hernandez's claims that MacInnis provided ineffective assistance by failing to (1) research and advise Hernandez regarding the habitual criminal charges; (2) spend adequate time with Hernandez in preparation for trial; (3) inform the district attorney or police about the existence of exculpatory evidence in the trunk of Sappington's car; (4) interview alibi witnesses; (5) thoroughly investigate and interview witnesses following the codefendant's trial; and (6) correctly advise Hernandez about his parole eligibility.

¶ 8    The court also rejected claims that (1) in connection with Hernandez's motion to withdraw his plea, Rule 32(d) counsel had failed to raise the fact that MacInnis had not spent adequate time with Hernandez; (2) Hernandez was denied due process as a result of prosecutorial misconduct; (3) both Rule 32(d) counsel and

3

appellate counsel were ineffective for failing to raise said misconduct; (4) Hernandez's plea was not knowing, voluntary, and intelligent because the habitual criminal statute was used as a "threat, despite the statute not being available"; and (5) Hernandez's sentence was constitutionally disproportionate.

¶ 9     At the outset of its written order denying Hernandez's Crim. P. 35(c) motion, the district court made detailed credibility findings. As pertinent here, with the exception of Hernandez himself, the court generally found credible all of the hearing witnesses. As for Hernandez, however, the court found that his testimony was not credible "in any way" because it was self-interested, often conflicted with other evidence, did not make "simple common sense," and was at times inconsistent with his previous representations. Because of its "serious concern" about Hernandez's credibility, the court generally declined to credit his claims about his interactions with defense counsel, his contemporaneous understanding of the terms of the plea bargain and associated sentencing requirements, and his assertions that he would not have accepted the plea agreement had he fully understood its terms.

## II. Standard of Review and Governing Law

¶ 10 In reviewing a Crim. P. 35(c) claim, we presume the conviction's validity, and the defendant bears the burden to prove he is entitled to relief. *Dunlap v. People*, 173 P.3d 1054, 1061 (Colo. 2007). After an evidentiary hearing, we defer to the district court's factual findings if they are supported by the record, and we review its legal conclusions de novo. *Id.* at 1063. Because the court in a postconviction proceeding is best positioned to determine witness credibility and the weight to give to testimony, we defer to its determination of these matters and may not disregard or second-guess them. *See People v. Hardin*, 2016 COA 175, ¶¶ 39, 43; *People v. Pendleton*, 2015 COA 154, ¶ 13; *see also Kailey v. Colo. State Dep't of Corr.*, 807 P.2d 563, 567 (Colo. 1991) ("In a Crim. P. 35 proceeding, the court is the trier of fact. It is thus the province of the court, as the trier of fact, to determine the credibility of the witnesses and the weight to be given their testimony.").

¶ 11 To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) his attorney's performance was deficient and (2) the deficient performance prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Dunlap*, 173

5

P.3d at 1062. An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the plea context, this means the defendant must show an objectively reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and instead would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 57, 59 (1985); *People v. Vicente-Sontay*, 2014 COA 175, ¶ 20.

### III.   Discussion

¶ 12     Hernandez challenges the district court's findings and conclusions on his claims that MacInnis (1) inadequately advised him as to his sentencing exposure; (2) failed to meet with Hernandez and prepare for trial; (3) refused to interview alibi witnesses or investigate the existence of allegedly exculpatory evidence in the trunk of Sappington's car; and (4) incorrectly advised him regarding his parole eligibility. Because the record supports the court's factual findings, especially in light of its credibility determinations, and because we discern no error in its

application of the law to those findings, we perceive no error in its denial of postconviction relief.

### A. Advisement Regarding Habitual Criminal Sentencing and Proportionality Review

¶ 13    At the postconviction hearing, Hernandez testified that MacInnis "vaguely" discussed the habitual criminal counts with him.  But, he said, he and MacInnis never discussed trying to attack the prior convictions or the possibility of seeking a proportionality review.  Had Hernandez "known that there were avenues to challenge his prior convictions," he testified, he "[a]bsolutely" would have wanted to "explore those avenues."

¶ 14    The district court rejected Hernandez's account as a factual matter.  In declining to credit Hernandez's recollection of his discussions with MacInnis, the court pointed out the inconsistencies between the pro se postconviction motion and Hernandez's hearing testimony — noting in particular that Hernandez's pro se motion had asserted that he had raised questions with MacInnis about the validity of the habitual criminal charges.  Indeed, Hernandez asserted in his pro se motion that he had "informed counsel of the deficiencies in the prior convictions

and asked him why he hadn't filed any motions to suppress the priors or do any investigations as to his claims that the D/A could not prosecute him for being a habitual offender due to changes in the law."

¶ 15 Resolving the issue against Hernandez on credibility grounds, the court said, "Which is it? Was [Hernandez] completely uninformed as he testified to? Or did he specifically confront Mr. MacInnis with the law of the Habitual Criminal Statute? The Court finds [Hernandez] is throwing out any accusation he thinks will support his relief."

¶ 16 The record supports the district court's determination, which rested on its view of Hernandez's credibility. In his pro se postconviction motion, Hernandez wrote that he told MacInnis "to file a motion to suppress his priors" because they were not "grave and serious for purposes of being used to enhance his sentence" under the habitual criminal statute. He further alleged that he "informed counsel of the deficiencies in the prior convictions and asked him why he hadn't filed any motions to suppress the priors or do any investigations as to his claims that the [district attorney]

could not prosecute him for being a habitual offender due to changes in the law."

¶ 17    We are not persuaded by Hernandez's suggestion that the district court's finding is undermined because the inconsistency between Hernandez's motion and his testimony was "vague." Nor are we persuaded that Eubanks's testimony, in which she conceded that "she had done no research specific to Hernandez's habitual-criminal charges, did not discuss those with him, nor challenged them," supported his claim. At the hearing, it was Hernandez's position that MacInnis never discussed these matters with him. But in his motion, he asserted that just such a discussion had occurred — even if it was not resolved to his satisfaction. In any event, the district court is tasked with resolving testimonial inconsistencies and according weight to particular testimony, and we will not disturb those determinations. *See Hardin*, ¶¶ 39, 43; *see also People v. Perry*, 68 P.3d 472, 478 (Colo. App. 2002) ("Although the record contains some conflicting evidence, the trial court's conclusion is well-supported when the evidence is viewed in the context of its credibility determinations. Thus, we find no error.").

## B.    Adequacy of Time Spent with Hernandez

¶ 18    In his pro se motion, Hernandez asserted that MacInnis failed to spend adequate time with him to "discuss trial strategy and/or possible defenses."  In particular, he claimed that he "repeatedly requested for counsel to come and spend more time with him prior to trial," but MacInnis "failed to do so."  "Had counsel made even a little effort to visit with [Hernandez,]" the motion asserted, "he may have had the opportunity to see that [Hernandez] was innocent and could prove his innocence if given the chance."[1]

¶ 19    In its written order denying postconviction relief, the district court rejected Hernandez's claim that MacInnis performed deficiently by failing to spend adequate time with him.  Hernandez

---

[1] Postconviction counsel's supplement addressed this issue indirectly, elaborating on a corollary claim that Crim. P. 32(d) counsel rendered ineffective assistance by abandoning a claim that Hernandez's "attorneys" spent inadequate time with him.  In a footnote in his opening brief, Hernandez notes this posture and states that he "maintains that [Rule 32(d)] counsel was ineffective for abandoning" this claim.  However, because he does not elaborate on this point, we decline to address it.  *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (claims that are "really nothing more than an assertion" are insufficient to warrant further review); *see also Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) (we will not consider a proposition presented without argument or development; an appellant must make specific assertions of error, supported by facts and authority).

testified that MacInnis came to see him at the jail "maybe three or four times total" during the pendency of the case. The court found that Hernandez's testimony on this issue was "inconsistent with the admitted evidence" and "not credible." The court noted that the jail visitation logs showed that MacInnis had visited Hernandez at the jail nine times during the pendency of the case. And it noted that the defense team collectively spent considerable time with Hernandez.

¶ 20 The record supports these determinations. Likewise, the court credited the testimony of Crim. P. 32(d) counsel that, in his experience, the number of hours an attorney spends with a client is not the sole measure of their effectiveness; rather, what an attorney is doing behind the scenes is also important. *See Moody v. Polk*, 408 F.3d 141, 148 (4th Cir. 2005) ("[T]here is no established 'minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel.'" (citation omitted)).

¶ 21    Under these circumstances, we agree with the district court that Hernandez failed to demonstrate deficient performance.[2]

### C.    Failure to Investigate

¶ 22    Hernandez contends that MacInnis failed to investigate exculpatory evidence and that his failure to conduct an adequate investigation contributed to Hernandez's decision to plead guilty. We disagree.

### 1.    Alibi Witnesses

¶ 23    In his pro se postconviction motion, Hernandez claimed that he gave MacInnis a list of "several" potential alibi witnesses — "includ[ing] but . . . not limited to Jakara Craig" — but that

---

[2] Because it lacks record support, we reject Hernandez's suggestion on appeal that, due to MacInnis's "extreme" mental health issues, he likely was not doing the sort of behind-the-scenes work that Crim. P. 32(d) counsel mentioned.  No one testified to this effect at the hearing.  And though the record indicates that MacInnis had some mental health issues, no evidence was presented indicating what those issues were or whether they adversely affected his ability to spend time with Hernandez or prepare for trial.  Likewise, to the extent Hernandez generally claims ineffective assistance of counsel based on MacInnis's alleged "mental illness," and asserts that such issues were broadly "impacting [MacInnis's] ability to competently practice law," he does so for the first time on appeal, and we will not address such a claim.  *DePineda v. Price*, 915 P.2d 1278, 1280 (Colo. 1996); *accord People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007).

MacInnis had failed to conduct any additional investigation. Postconviction counsel's supplement did not expound on this claim, and Hernandez did not present any evidence relating to it at the postconviction hearing.

¶ 24    The court acknowledged Hernandez's failure to develop his claim in its written order, observing that

> without more information about the alibi witnesses and what they would say, this Court cannot assess whether counsel was remiss in not following up on them or whether [Hernandez] was prejudiced by this. Even if this claim were true and [Hernandez] really did bring alibi witnesses to Mr. MacInnis' attention, there is not enough information to determine if the failure to follow up was remiss. [Hernandez] has not met his burden of showing ineffective assistance.

¶ 25    We will not disturb the court's determination. Hernandez bore the burden to establish his claim of ineffective assistance, and he did not produce any evidence at the Rule 35(c) hearing related to the alleged alibi witness or witnesses. And the allegations in his motion were too vague and conclusory to warrant relief. *Cf. People v. Osorio,* 170 P.3d 796, 799 (Colo. App. 2007) (A postconviction court may deny a Crim. P. 35(c) claim without a hearing if "the

13

allegations of counsel's deficient performance are merely conclusory, vague, or lacking in detail.").

### 2. Exculpatory Evidence

¶ 26    Hernandez also claimed that MacInnis was ineffective because he failed to "inform the D/A-police about the existence of exculpatory evidence in [the] trunk of Taylor Sappington's car (prosecution's star witness)."

¶ 27    In his pro se motion, Hernandez said he had informed both MacInnis and the defense investigator that exculpatory evidence (DNA) was present in Sappington's car. He further asserted that "a friend" had provided him with this information, and that MacInnis told him the court "wouldn't allow it" and "disregarded the information," also failing to inform the police or the prosecutor about it.

¶ 28    At the hearing, Hernandez testified similarly, adding that the "friend" to whom he referred was named Anthony Barrera.

¶ 29    The district court rejected Hernandez's claim that MacInnis performed deficiently by failing to seek an order to search the car or informing the district attorney or police about this allegedly exculpatory evidence. The court specifically discredited

Hernandez's testimony that he had raised this issue with MacInnis. Moreover, the court found that, even if he had, it was not deficient performance for MacInnis to decline to seek a search warrant for the car because the request would have rested only on vague speculation and therefore would not have been granted.

¶ 30 On appeal, Hernandez correctly notes that Eubanks testified at the hearing that she "knew about Hernandez's request and that he was focused on Sappington's car." But Eubanks further testified that MacInnis would have tasked the defense investigator with follow-up investigation on such a request. And notably, postconviction counsel did not question the defense investigator on this topic.

¶ 31 Nonetheless, we agree with the district court that, given the information Hernandez allegedly gave to MacInnis, it was not deficient performance to decline to pursue further investigation of this issue based on the speculative nature of the information Hernandez allegedly gave to MacInnis. *See Strickland*, 466 U.S. at 691 (stating that "counsel has a duty to make reasonable investigations" and the "reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own

15

statements or actions," including "information supplied by the defendant"). We are not persuaded otherwise by the fact that, at the hearing, Hernandez identified the "friend" who had given him the information about the car. He did not allege that he shared the identity of this friend with his counsel.

### D. Parole Eligibility Advisement

¶ 32 At the postconviction hearing, Hernandez testified that MacInnis told him he "could be out [of prison] in 10 to 15" because he would only have to serve fifty percent of his forty-year sentence before he would be parole eligible. He further testified that he would not have accepted the plea offer had he known that he would actually have to serve seventy-five percent of his sentence before becoming parole eligible.

¶ 33 The district court acknowledged that the failure to correctly advise a defendant about his parole eligibility would be deficient if such a claim "were true." But the court stated that it could not "find it is true" because the court simply did "not believe" Hernandez's testimony on this point and found Hernandez's statements about what counsel told him "not credible." We are not free to disregard this credibility determination because, as noted, it

is the province of the district court, as the trier of fact, to determine the credibility of the witnesses, to weigh their testimony, and to resolve any inconsistencies in the evidence. *See Hardin*, ¶¶ 39, 43; *Kailey*, 807 P.2d at 567.

¶ 34 In addition, the district court credited the testimony of the defense investigator, who specifically testified that he remembered talking to Hernandez about the forty-year plea offer in conjunction with seventy-five percent parole eligibility. From this testimony and the exhibits admitted at the postconviction hearing, the district court extrapolated that such a conversation would have taken place on April 21, 2015, at which time, the jail visit log exhibits reflect, both the investigator and MacInnis were with Hernandez. Thus, the court found, Hernandez was "undoubtedly advised" that, under the plea agreement, he would serve seventy-five percent of his sentence before becoming parole eligible.

¶ 35 Notwithstanding Hernandez's arguments to the contrary, the record supports the district court's finding. Hernandez's testimony, along with the exhibits admitted at the hearing, reflect that the forty-year plea offer was first presented to him during MacInnis's second jailhouse visit on April 21, 2015. The jail visit log exhibits

further reflect that MacInnis and the defense investigator were together with Hernandez at that time. Though the investigator didn't recall MacInnis being present when he discussed the forty-year plea offer with Hernandez, the district court resolved this as a lapse in memory, finding that "sometimes memory is a strange thing."

¶ 36 Hernandez offers alternative interpretations of the evidence, asserting that the investigator's testimony was untethered from the actual forty-year offer and was "nothing more than a generalized exploration about how [the Department of Corrections] would likely classify a" hypothetical "40-year deal." We are not persuaded. The investigator testified to his memory of talking to Hernandez about a "particular plea agreement" of forty years. Likewise, we are unpersuaded by Hernandez's suggestion that the investigator's conversation with Hernenadez more likely occurred a year earlier, when other plea negotiations were occurring. While the evidence could possibly support such an inference, even when evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine the issue, and we will not reweigh the evidence or

disturb the district court's credibility determinations. *See Hardin,*
¶¶ 39, 43; *Perry,* 68 P.3d at 478.

## E. Cumulative Error

¶ 37 For the first time on appeal, Hernandez contends that, even if the alleged errors he has identified on appeal were harmless or did not affect his substantial rights on their own, their cumulative effect warrants reversal. Even if we assume that the cumulative error doctrine applies to ineffective assistance of counsel claims, we have not identified or assumed any error occurred. Thus, we reject this contention. *See People v. Shanks,* 2019 COA 160, ¶ 76 (for the cumulative error doctrine to apply, numerous errors must have been committed, not merely alleged).

## IV. Abandoned Claims

¶ 38 Hernandez does not specifically reassert his claims related to (1) ineffective assistance of Rule 32(d) counsel or appellate counsel; (2) prosecutorial misconduct; or (3) his entitlement to a proportionality review of his sentence. Those claims are therefore abandoned. *See People v. Rodriguez,* 914 P.2d 230, 249 (Colo. 1996) (the failure to specifically reassert on appeal all of the claims

disposed of in a postconviction proceeding constitutes a "conscious relinquishment" of those claims not reasserted).

## V.    Disposition

¶ 39    The district court's order denying Crim. P. 35(c) relief is affirmed.

JUDGE MOULTRIE and JUDGE BERGER concur.